UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**ANGELA PAIGE FISHER**  PLAINTIFF

v.  CIVIL ACTION NO. 1:21-cv-140-BJB

**AMY MILIKEN et al.**  DEFENDANTS

### MEMORANDUM OPINION

*Pro se* Plaintiff Angela Paige Fisher, proceeding *in forma pauperis*, filed two 42 U.S.C. § 1983 lawsuits, which have been consolidated. This matter is before the Court for screening of the Complaint (DN 1) and Amended Complaint (DN 19) pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the Court dismisses the action.

### I. STATEMENT OF CLAIMS

Plaintiff's claims arise from her child's removal from her custody on December 3, 2018, by the Commonwealth of Kentucky's Cabinet for Health and Family Services (CHFS). Plaintiff sues the "Commonwealth of Kentucky Court of Justice"; the Department of Community Based Services (DCBS); the CHFS; Warren County Attorney Amy Hale Milliken; Warren County Circuit Clerk Brandi Duvall; Assistant County Attorney Rebecca Gibson; Circuit Family Judge David Lanphear; Social Service Worker (SSW) Supervisor Kimberly Laird Humble; SSW employees Heather Brod, Shaleesa Clayton, Kimberly Butler, Sheena London Humphrey, Tanyce Claypool, and Joseph Phelps; Secretary Eric Friedlander; Detective Vulyncia Poindexter; and Ombudsman Angela Larson.

Plaintiff alleges that her child was illegally taken from her custody without grounds and placed in a private foster care home that is "hidden" and cannot be "located in the computers";

that the foster father is a "life long career habitual felon putting my child[']s safety at risk"; and that her child should have been returned to her a long time ago. DN 1 at 9.

Plaintiff further alleges that a due-process violation occurred when, on March 22, 2019 she was convicted of "a hate crime, of [female genital mutilation (FGM)]" but only recently found out about the conviction and never stood trial for it. *Id*. at 8. She states that "an arrest of FGM" is on her "records" and it was placed there willfully and maliciously. *Id*. at 9. Plaintiff also asserts that she is suffering double jeopardy because she is "now being punished in the courts and the Cabinet on the same case different trial for a [termination of parental rights (TPR)]," and that her Sixth Amendment rights have been violated because she has been denied a public trial, a lawyer, and information concerning the nature of the charges and evidence against her. *Id*. at 11.

Plaintiff states that her contact with her child was suspended on June 4, 2021, after Plaintiff made several "new discoveries" in her case and a complaint she filed with the Ombudsman on the case worker led to the worker's dismissal. *Id*. at 10. She also alleges that on September 8, 2021 she discovered that "a motion for Return of Custody was fake and never filed through the courts[.]" *Id*. at 3; *see also id.* at 12.

Plaintiff further alleges that Defendants conspired to injure, threaten, or intimidate her in the free exercise or enjoyment of a right or privilege by the Constitution or federal law. *Id*. at 7.

Plaintiff also asserts that she is being denied access to records. *Id*. at 3, 11.

In her amended complaint, Plaintiff refers to the Fourth and Fourteenth Amendments. DN 19 at 6. She alleges that Defendant Duval altered her court records. *Id*. at 10. Plaintiff also alleges that Defendant Milliken did not turn over exculpatory evidence and that she has not had adequate notices from the state court. *Id*. at 11.

In both the Complaint and Amended Complaint, Plaintiff asks to have her child returned to her custody and to be awarded monetary damages.

Plaintiff attaches a number of documents to the Amended Complaint, including documents from the two Warren Family Court cases against her: *CHFS v. Fisher*, Juvenile Court Case No. 18-J-00773, in which her child was placed in CHFS custody; and *CFHS v. Fisher*, Adoption Court Case No. 21-AD-00040, which seeks to have the child placed for adoption.[1] The records show that she was represented by counsel in both Juvenile Court Case No. 18-J-00773, and Adoption Court Case No. 21-AD-00040. *See* DN 19-3 at 36-37; DN 19-4 at 28.

The documents attached show that on October 7, 2018, before the removal of Plaintiff's child to CHFS custody, Judge Lanphear issued a protection order for Plaintiff's boyfriend, DN 19-3 at 44–45, with whom Plaintiff and her child lived, because Plaintiff's boyfriend feared Plaintiff would falsely report him for domestic violence and because he was in fear of his life. DN 19-4 at 44-45. At that time, Plaintiff left her boyfriend's residence with her child. *Id*. at 45.

On November 1, 2018, social worker Defendant Humphrey was called after a disturbance involving Plaintiff, her boyfriend, and her child, and filled out a DCBS "Confidential Suspected Abuse/Neglect, Dependency or Exploitation Reporting Form." DN 19-4 at 1-2. According to the form, Plaintiff's boyfriend advised Defendant Humphrey that Plaintiff was beating her child in an argument that began over a cell phone. *Id*.

On November 29, 2018, a police officer responded to a family disturbance at which time Plaintiff's boyfriend reported that Plaintiff had been "drunk for three days after being fired from her job and was in his house trying to set up a drug buy." *Id*. at 44. The boyfriend also stated that Plaintiff frequently used drugs and put her child in a dangerous situation, including taking

---

[1] Judge Lanphear was the sitting judge in both cases until he recused himself in No. 21-AD-00040 after Plaintiff named him as a Defendant in this lawsuit.

him/her to a "'crack house'" after he had Plaintiff and her child evicted from his house. *Id*. Further, the child, referring to the November 1, 2018, incident, now reported that Plaintiff did indeed attack him/her; admitted that he/she was afraid of Plaintiff when she drinks or uses drugs; and stated that Plaintiff has a drug problem. *Id*. The child also reported that he/she was not going to cover up for Plaintiff any longer, that Plaintiff had beaten him/her in the past, and that he/she believed that Plaintiff would take her/him to an unsafe house like a crack house again. *Id*. The officer also spoke to Plaintiff's mother who voiced concern over the child's safety in Plaintiff's custody. *Id*. at 45.

By order of the Warren Family Court dated December 3, 2018, No. 18-J-00773-001, Plaintiff's child was committed to custody of the CHFS. DN 19-3 at 15. It appears from the documents that Plaintiff agreed to undergo counseling and that she was able to visit periodically with her child via video. *See* DN 19-4 at 17-18, 37-43.

The records attached to the Amended Complaint also show that on March 29, 2019, Plaintiff was arrested on a charge of Fourth Degree Assault (domestic violence) on her boyfriend. *Id*. at 46.

Also according to the records, on December 5, 2019, Plaintiff, through counsel, moved the Warren Family Court for return of her child. DN 19-3 at 36-37.

The records further show that on June 2021, a therapist recommended that visitation between Plaintiff and her child be suspended as not being productive or healthy for the child. *Id*. at 12.

On July 22, 2021, the Warren Family Court entered an order in the adoption case, No. 21-AD-00040, setting forth a period of discovery and setting trial for January 20, 2022. *Id*. at 41. A copy of that order was sent to Plaintiff and her counsel. *Id*.

4

A CHFS report dated August 4, 2021, to Judge Lanphear explained that the child wanted to be adopted by her foster parents and that CHFS had received a "goal change" to adoption on November 13, 2020.  *Id*. at 9-11.  CHFS requested that Plaintiff "be ordered to not harass or intimidate the foster parents or CHFS staff."  *Id*. at 11.

Plaintiff, through counsel Mark T. Smith, filed a response on August 10, 2021, to the petition for involuntary termination of parental rights in No. 21-AD-00040.  *Id*. at 39.

On September 8, 2021, Plaintiff went to the Warren County Justice Center where she reviewed her Family Court records.  A few days later, Plaintiff filed a complaint on a Circuit Clerk Complaint Form against Defendant Duvall for "altering documentation in [her] court file [in] 18-J-00773-001."  DN 19-4 at 31-33.  On that form, Plaintiff stated that:

> documentation has disappeared out of my files or has clearly been tampered with in attempt[t]s to alter.  Very unprofessional and by far the worst sloppy as one can be. . . . Lastly, Warren county clerk of court has a hard time getting my address correct on the case 18-J-0073-001[.]

*Id*. at 32.

Plaintiff also filed a complaint regarding the prosecuting attorney, Defendant Milliken, to the Judicial Conduct Commission on October 7, 2021, alleging that Defendant Milliken had "[i]ncrease[ed] the severity of my charges after my child was took and in custody I was never made aware Female Genital Mutilation/Ass[a]ult/ Injury on my child."  *Id*. at 27-29.  She also filed a complaint form to the Judicial Conduct Commission on Judge Lanphear dated October 20, 2021, alleging in pertinent part:  "My court documentation has been altered through the clerk of court . . . My Statutory and constitutional Right[]s are continuously being violated[.] Warren County Justice Center is at fault."  *Id*. at 34-35.

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, this Court must review this case. *See* § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 608-09. This Court must dismiss such a case if the Court determines that the action is "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." § 1915(e)(2)(B). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

### A. Request to have custody reinstated

This Court lacks jurisdiction to consider Plaintiff's request to have her child returned to her custody due to the domestic-relations exception to federal jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that the domestic-relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). The domestic-relations exception applies if a party seeks to modify or interpret an existing divorce, alimony, or child-custody decree. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015). To address Plaintiff's request to reinstate her parental rights would require the Court to address the merits of the state court's child-custody decree and is, therefore, impermissible under the domestic-relations exception. *See, e.g., Carpenter Jenkins v. Scotta*, No. 17-11781, 2019 WL 5680344, at *5 (E.D. Mich. Aug. 20, 2019), *report and recommendation adopted*, No. 2:17-CV-11781, 2019 WL 4686474 (E.D. Mich. Sept. 26, 2019). The Court dismisses this claim for lack

of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## B. Claims concerning charge of FGM

Plaintiff refers to being charged and convicted of FGM. According to Plaintiff, this violates her right to be protected from double jeopardy. DN 1 at 11.

"The double jeopardy clause applies only to proceedings that are essentially criminal and is meant to prevent successive criminal proceedings for the same offense." *Brown v. Columbus Bd. of Educ.*, 638 F. Supp. 2d 856, 866 (S.D. Ohio 2009) (citing *Hudson v. United States*, 522 U.S. 93, 98-99 (1997)). An action for involuntary termination of parental rights "is a civil, not a criminal, proceeding." *Cabinet for Health & Family Serv. v. A.G.G.*, 190 S.W.3d 338, 347 (Ky. 2006). Consequently, even if Plaintiff had been charged with the crime of FGM instead of [INSERT] and her parental rights were involuntarily terminated due to child abuse in the form of FGM, this wouldn't violate the Double Jeopardy Clause. Plaintiff, therefore, fails to state a double-jeopardy claim.

Plaintiff also alleges that the supposed charge of FGM violated her Sixth Amendment rights because she was denied a public trial, a lawyer, and information about the charge and evidence against her. DN 1 at 11.

The only reference to FGM in the records Plaintiff provides is in a CHFS intake summary form. DN 19-4 at 1-2. That form states under "Staff Determination" that "[t]he intake SSW accepts a physical abuse report when the reporting source alleges that a child: D. Has been exposed to bizarre or cruel forms of punishment of inappropriate restraint." *Id.* at 2. The word "No" appears next to the question, "Is this intake an alleged fatality/near fatality?" *Id.* at 6. The form then asks if there is any of the following: "Imminent Danger," "Victim of Human

7

Trafficking," "Victim of Female Genital Mutilation," or "Department Employee." None of the boxes next to any of these questions are checked. *Id.*

None of the attached state-court documents show that a criminal case has been brought against Plaintiff for FGM. Because the Sixth Amendment applies to criminal, not civil, proceedings, *Kirby v. Illinois*, 406 U.S. 682, 690 (1972), the Court dismisses Plaintiff's Sixth Amendment claim for failure to state a claim.

### C. Conspiracy claim

Plaintiff alleges that Defendants conspired to injure, threaten, or intimidate her in the free exercise or enjoyment of a federal right or privilege.

To state a conspiracy claim under § 1983, a plaintiff must show: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his or her civil rights. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985); *see also Am. Postal Workers Union Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). If a plaintiff fails to plead the conspiracy with some specificity, dismissal for failure to state a claim is appropriate. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).

In this case, Plaintiff merely asserts that Defendants conspired to injure, threaten, or intimidate her in exercising or enjoying a federal right or privilege. This statement is entirely conclusory; she does not identify which Defendants were allegedly involved, what their plan was, or any overt act in furtherance of the conspiracy. As such, Plaintiff's allegation is entirely too vague and conclusory to state a § 1983 conspiracy claim. *See Ryan v. Michigan*, No. 2:20-CV-12502, 2021 WL 5585930, at *3 (E.D. Mich. Nov. 30, 2021); *Bell v. Admin. Bd. of Claims*, No. 20-CV-10193, 2020 WL 2525827, at *4 (E.D. Mich. May 18, 2020) (plaintiff failed to state

8

a conspiracy claim because he alleged only that "Sims conspired with Payne 'and broke the property seals on all personal property without authorization'" . . . [and] that "[a]ll defendants have . . . conspired as defendants all [sic] deprivation of property and constitutional rights were violated").

### D. Fourteenth Amendment claim

Plaintiff refers to the Fourteenth Amendment's Due Process Clause apparently in reference to the alleged denial or alteration of court records, but does not otherwise specify the theory of liability she seeks to invoke. A procedural due-process claim requires Plaintiff to show: (1) that "there exists a liberty or property interest which has been interfered with by the State"; and (2) that "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted). A so-called "substantive due process claim," by contrast, requires a plaintiff to "allege facts showing that arbitrary and capricious government action deprive[d] [her] of a constitutionally protected property interest, or that the defendants' conduct "shock[s] the conscience." *Haertel v. Mich. Dep't of Corr.*, No. 20-1904, 2021 WL 4271908, at *3 (6th Cir. May 11, 2021) (internal quotation marks and citations omitted) (brackets in *Haertel*).

Plaintiff asserts that Defendant Duvall and unidentified members of her staff are denying her access to records, apparently in connection to what she believes was a conviction of FGM. DN 1 at 8; DN 19 at 6. As explained above, none of the documents submitted by Plaintiff indicate she was charged, much less convicted, of FGM.

Plaintiff also alleges that Defendant Duval altered her court records but does not explain what records she is referring to. *See* DN 19 at 10 ("Starting December 3, 2018 with the Clerk of

9

Court Brandi Duvall has falsely made documents altered, and forged my court files, and co-workers in my case 18-J-000073-001.").

Plaintiff also alleges that she discovered on September 8, 2021 that "a motion for Return of Custody was fake and never filed through the courts[.]" DN 1 at 3; *see also id.* at 12. Attached to the Amended Complaint, however, is a "Notice-Motion" in case No. 18-J-00773 filed on behalf of Plaintiff for the return of custody with a stamp indicating it was filed by counsel on December 5, 2021. DN 19-3 at 36-37.

Plaintiff's allegations are all either vague and conclusory, or else belied by the documents attached to her Amended Complaint. The Court holds that the complaint failed to state a due-process claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### E. Fourth Amendment claim

The Court interprets Plaintiff's reference to the Fourth Amendment and allegation that her child was unlawfully taken from her custody (DN 1 at 8-9) as a claim that her child was seized in violation of the Fourth Amendment.

"'The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances.'" *Godboldo v. Cty. of Wayne*, 686 F. App'x 335, 343 (6th Cir. 2017) (quoting *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006)).

Here, the records submitted by Plaintiff show that her child was committed to the custody of the CHFS pursuant to an order of the Warren Family Court dated December 3, 2018, No. 18-J-00773-00. DN 19-3 at 15. Accordingly, Plaintiff's own filings do not allege that any unreasonable seizure occurred. Therefore, the Court must dismiss this claim for failure to state a claim upon which relief may be granted. *See Godboldo*, 686 F. App'x at 343.

For the foregoing reasons, the Court will dismiss this lawsuit in a separate Order.

Date: April 12, 2022

Benjamin Beaton, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Warren County Attorney
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
B213.009

11